PROST, Chief Judge,
dissenting.
In finding that the claim limitation-at-issue — “virtually free from interference”— meets the definiteness requirement, the majority relies primarily, if not exclusively, on a single, non-definitional remark from the prosecution history and ignores intrinsic evidence that injects ambiguity. The written description lacks any reference to the disputed limitation. And One-E-Way does not submit that the limitation-at-issue has any ordinary meaning to a skilled artisan.
By relying so heavily on the cherry-picked prosecution remark, the majority’s decision significantly relaxes the law on indefiniteness against the tide of the Supreme Court’s recent decision in Nautilus, Inc. v. Biosig Instruments, Inc., — U.S. —, 134 S.Ct. 2120, 189 L.Ed.2d 37 (2014). It also flouts the well-established principle that “the written description is key to determining whether a term of degree is indefinite.” Sonix Tech. Co. v. Publ’ns Int’l, Ltd., 844 F.3d 1370, 1378 (Fed. Cir. 2017). Even if it may be possible to “ascribe some meaning” to the disputed limitation, the Supreme Court has held that more is required. Nautilus, 134 S.Ct. at 2130. Here, the intrinsic evidence falls well short of providing a skilled artisan “reasonable certainty” about the metes and bounds of the disputed limitation, especially as distinguished from the narrower limitation “free from interference” (without the modifier “virtually”). Id. at 2124.
I therefore respectfully dissent from the majority’s conclusion reversing the Commission’s indefiniteness determination.
I
Under the definiteness requirement, a patent applicant must conclude the specification with “oné or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards *1068 as his invention.”[1] 35 U.S.C. § 112, ¶ 2. The Supreme Court has explained that this requirement serves an important notice function, ensuring that a patent “ap-prisfes] the public of what is still open to them.” Nautilus, 134 S.Ct. at 2129 (quoting Markman v. Westview Instruments, Inc., 517 U.S. 370, 373, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996)). It should also serve as a “meaningful ... check” against “fos-terling] [an] innovation-discouraging ‘zone of uncertainty.’” Id. at 2129-30 (quoting United Carbon Co. v. Binney & Smith Co., 317 U.S. 228, 236, 63 S.Ct. 165, 87 L.Ed. 232 (1942)). In resolving the level of precision required, the Supreme Court held that patent claims are invalid for indefiniteness if, when read in light of the specification and the prosecution history, they “fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention.” Id. at 2124.
The parties agree that “virtually free from interference” is a “term of degree.” Appellant’s Opening Br. 11; Government’s Br. 19; Respondents’ Br. 13.[2] Terms of degree are not “inherently indefinite,” and “absolute or mathematical precision is not required.” Interval Licensing LLC v. AOL, Inc., 766 F.3d 1364, 1370 (Fed. Cir. 2014). Nevertheless, the claims, read in context “must provide objective boundaries for those of skill in the art.” Id. at 1371 (citing Nautilus, 134 S.Ct. at 2130 & n.8). “[P]ast and future prosecution of related patents may be relevant to the construction of a given claim term.” Teva Pharm. USA, Inc. v. Sandoz, Inc., 789 F.3d 1335, 1343 n.5 (Fed. Cir. 2015). But as noted above, the written description is “key” to the indefiniteness inquiry for a term of degree. Sonix, 844 F.3d at 1378; see also Liberty Ammunition, Inc. v. United States, 835 F.3d 1388, 1395 (Fed. Cir. 2016) (“[T]he specification is the single best guide to the meaning of a disputed term and usually, it is dispositive.” (alteration and internal quotation marks omitted)).
One-E-Way did not submit any extrinsic evidence to argue that “virtually free from interference” has any ordinary meaning to a person of ordinary skill in the art. The indefiniteness inquiry therefore rests on the intrinsic evidence.
A
One-E-Way relies heavily on a single statement made during prosecution of U.S. Patent No. 7,684,885 (“’885 patent”), which shares a common specification with the patents-at-issue. Specifically, in traversing a rejection, the patentee stated that the prior art “does not teach, disclose, or suggest ... a relationship where interference is virtually eliminated (e.g. where eavesdropping cannot occur) where multiple receivers and transmitters occupy the same environment.” J.A. 15271 (emphasis added). One-E-Way submits that this remark “inform[s]” a person of ordinary skill that “virtually free from interference” refers to “no eavesdropping.” Appellant’s Opening Br. 9, 15. The Government and Respondents argue that the remark is entirely irrelevant because it related to claims that do not recite the “virtually free from interference” limitation.
*1069 For the reasons explained by the majority (and contrary to the Commission’s decision), I agree that the prosecution history statement, read in context, is relevant to the meaning of “virtually free from interference.” But I disagree that it, alone or with the rest of the intrinsic evidence, informs with the reasonable certainty needed to satisfy the definiteness requirement.
One-E-Way concedes that the patentee was not acting as his own lexicographer to define “virtually free from interference” to mean “no eavesdropping.” Oral Argument 9:08-9:41, http://oralarguments.cafc. uscourts.gov/mp8/2016-2105.mp3. Indeed, One-E-Way originally proposed construing “virtually free from interference” to mean “for practical purposes free from extraneous energy artifacts impeding the desired signal.” J.A. 11252. By doing so, One-E-Way implicitly recognized that “no eavesdropping” is not the only way that a skilled artisan might understand the disputed limitation in view of the intrinsic evidence. It was not until the Government argued that the term is indefinite that One-E-Way changed its proposed construction to rely on the statement from the prosecution history. See J.A. 11269-71. That statement is the only place in the intrinsic evidence where the concept of “eavesdropping” ever appears. Therefore, though the majority dresses up its analysis with references to the claims and specification, its conclusion that the disputed limitation “means the ability to listen without eavesdropping,” Majority Op. 1066, necessarily hinges on the prosecution history statement.
One-E-Way acknowledges that the prosecution statement provides “no eavesdropping” merely as an example of when “virtually free from interference” might be satisfied. Oral Argument 10:47-11:54. As Respondents argue, the use of “e.g.” in the prosecution statement supports that reading. But merely “identifying] some standard for measuring the scope of [a] phrase” is not sufficient. Interval Licensing, 766 F.3d at 1373 (internal quotation marks omitted). The majority runs afoul of the Supreme Court’s warning against “viewing matters post hoc” to “ascribe some meaning to a patent’s claims.” Nautilus, 134 S.Ct. at 2130; cf. Interval Licensing, 766 F.3d at 1374 (stating that it is inappropriate to “cull out a single ‘e.g.’ phrase from a lengthy written description to serve as the exclusive definition of a facially subjective claim term”).
To be sure, we have held a term to be definite where it is defined through specific examples in the written description or where an expert opines on the guidance of a detailed embodiment provided in the written description. See, e.g., Mentor Graphics Corp. v. EVE-USA, Inc., 851 F.3d 1275, 1293 (Fed. Cir. 2017) (relying on figures and examples in the specification); Apple Inc. v. Samsung Elecs. Co., 786 F.3d 983, 1002 (Fed. Cir. 2015), rev’d and remanded on other grounds, — U.S. —, 137 S.Ct. 429, 196 L.Ed.2d 363 (2016) (relying on expert’s explanation of an illustrated embodiment). Neither scenario, however, is before us. One-E-Way has not cited any cases finding a term to be definite based on a single example in the prosecution history of a related patent. I would decline to do so here.
B
One-E-Way also relies on the prosecution history of another related patent, U.S. Patent No. 9,107,000 (“’000 patent”), to support its construction of “virtually free from interference.” The majority does not include this portion of the prosecution history in its analysis. Perhaps that is because this part of the intrinsic evidence injects ambiguity, rather than clarity, into the disputed limitation.
*1070 During examination of the ’000 patent, the examiner stated: “[T]he CDMA, implementation of the combination requires a device be paired to a particular ‘code,’ which is the entire basis of CDMA. This code enables transmission and reception separate from other CDMA transmission, i.e. ‘virtually free from interference. ’ ” J.A. 5962 (emphasis added). One-E-Way argues that the examiner apparently had no trouble understanding the meaning of the disputed limitation. It relies on this court’s recent holding in Sonix that an examiner’s understanding of a claim term “provide[s] evidence that a skilled artisan did understand the scope of th[e] invention with reasonable certainty.” 844 F.3d at 1380.
But as the Government and Respondents correctly observe, that decision expressly noted that “application by [an] examiner ... do[es] not, on [its] own, establish an objective standard.” Id. Rather, in Sonix, this court relied primarily on written description support. Id. at 1378-79 (concluding that the written description provided sufficient level of detail). As explained below, such support is absent in this case.
Furthermore, the examiner’s statement does not refer to eavesdropping, only to separating transmissions. It is not clear how separating transmissions is related, if at all, to no eavesdropping. One-E-Way does not argue that those two concepts are synonymous, only that they are “consistent.” Appellant’s Opening Br. 21. But even assuming they are consistent, there is no indication that a person of ordinary skill would know which concept is being used to define “virtually free from interference.”
The examiner’s statement during prosecution of the ’000 patent therefore fails to demonstrate definiteness or advance One-E-Way’s “no eavesdropping” construction. If anything, the examiner’s statement adds uncertainty to the scope of “virtually free from interference” and supports a determination of indefiniteness.
II
The majority purports to also rely on the common specification of the patents-at-issue to bolster its definiteness conclusion. That specification, however, does not explain, explicitly or implicitly, the limitation “virtually free from interference.” Instead, it discusses “private listening without interference from other users or wireless devices.” ’258 patent col. 1 1. 65 (emphasis added).[3]
A
Notably, One-E-Way does not argue that the specification discloses any definition or specific embodiments of “virtually free from interference.” Instead, One-E-Way argues in the negative that nothing in the specification “provide[s] a contrary or inconsistent indication” to the prosecution history remark regarding “no eavesdropping.” Appellant’s Opening Br. 14. For example, One-E-Way contends that the specification’s use of “without interference” allows for some interference — i.e., it does not require zero interference — but stops short of saying that “without interference” is synonymous with “virtually free from interference.”[4] Id. at 23.
*1071 The phrase “without interference” is an absolute term like the phrase “free from interference” (without the modifier “virtually”) that appears in non-asserted claims. See, e.g., ’885 patent col. 6 ll. 44-45, col. 8 ll. 4-5, col. 8 ll. 29-31. Adding the modifier “virtually” provides some degree of broadening that is not captured, on its face, by the phrase “without interference.” Therefore, under a plain reading, the written description’s discussion of “without interference” maps onto the limitation “free from interference,” not the disputed limitation.
The majority relies on the phrase “private listening” from the written description, which it asserts is “entirely consistent” with the concept of “no eavesdropping” mentioned during prosecution. Majority Op. 1065. But the specification’s discussion of “private listening” only relates to “without interference,” which is not the same as “virtually free from interference.” When pressed at oral argument, One-E-Way itself declined to equate “private listening” with “no eavesdropping,” only going as far as to say that they can “coexist.” Oral Argument 15:41-18:01; see also Appellant’s Opening Br. 10 (asserting vaguely that “private listening and eavesdropping go hand-in-hand”). Just as it is unclear how the concept of separating transmissions is related to eavesdropping, it is also unclear how the concept of private listening is related to eavesdropping.
Therefore, the written description’s discussion of “without interference” and “private listening” do not inform the scope of “virtually free from interference.”
B
Furthermore, the majority fails to construe the meaning of the modifier “virtually,” which undisputedly broadens the scope of the phrase “free from interference.” That is because the intrinsic evidence lacks any such disclosure.
Even if we need not separately construe “free from interference,” we cannot ignore its relevance to the inquiry before us. Cf. Merck & Co. v. Teva Pharm. USA, Inc., 395 F.3d 1364, 1372 (Fed. Cir. 2005) (“A claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so.”). Adding the modifier “virtually” provides the quintessential wiggle room to reach some audio transmissions that are not strictly “free from interference.” And One-E-Way concedes that under the doctrine of claim differentiation, “virtually” must carry significance in this' context. See Appellant’s Opening Br. 8, 17; Oral Argument 1:58-2:09. Yet, as discussed above, the written description only delineates the claimed invention in terms of audio free from interference. The use of “virtually” in the claim language is therefore nebulous and does not indicate how much more interference is acceptable to satisfy the disputed limitation.
The majority makes no attempt to construe the import of the word “virtually.” The closest it gets to clarity is to characterize audio that is “free from interference” as being “a bit better” than audio that is “virtually free from interference.” Majority Op. 1066. To be sure, One-E-Way relies on the specification’s reference to a technique called “fuzzy logic detection” to argue that the written description is not limited to audio with strictly zero interference. See ’258 patent col. 3 11. 32-35. Even if that is true, however, One-E-Way does *1072 not submit that the use of fuzzy logic detection distinguishes audio “virtually free from interference” and audio “free from interference.” Indeed, it cannot be the point of distinction because the ’885 patent includes claims that recite the use of fuzzy logic detection for both levels of interference. See, e.g., ’885 patent col. 6 l. 60-col. 7 l. 7, col. 7 l. 57-col. 8 l. 7, col. 8 ll. 21-38.
Therefore, nothing in the intrinsic evidence clarifies the degree of broadening attached to the word “virtually” or provides a skilled artisan with reasonable certainty about the objective boundaries of the disputed limitation.
Ill
I recognize that modifiers like “virtually” are some-times used in claim limitations to provide some leeway in scope. But a skilled artisan reviewing the patents-at-issue must still be able to determine the objective boundaries of the limitation with reasonable certainty. Nautilus, 134 S.Ct. at 2124. Here, the intrinsic evidence, at best, mentions one example for determining when audio is “virtually free from interference,” and that example only appears in a single “e.g.” remark from the prosecution history of a related patent. Viewed alongside the remainder of the intrinsic evidence, which either remains silent or injects ambiguity, there is simply not enough for a person of ordinary skill to determine the boundaries of the limitation, much less the import of the word “virtually.” The majority’s effort to attribute some meaning to the disputed limitation falls far short of the level of clarity required by the Supreme Court under Nautilus and skirts the public-notice function of the definiteness requirement.
I would thus affirm the Commission’s determination that the claim limitation “virtually free from interference” is indefinite. For the foregoing reasons, I respectfully dissent.

. The language of 35 U.S.C. § 112, ¶2 was replaced with § 112(b) by § 4(c) of the America Invents Act ("AIA”), and § 4(e) makes that change applicable "to any patent application that is filed on or after” September 16, 2012. Pub. L. No. 112-29, § 4, 125 Stat. at 296-97. Because the applications resulting in the patents-at-issue were filed before that date, the pre-AIA version of § 112 applies.

. Following the majority’s convention, I refer to the Commission as the "Government” when referring to its role as a party on appeal.

. For consistency with the majority opinion, I cite to the '258 patent when discussing the common specification.

. At oral argument, One-E-Way submitted for the first time that "without interference” means "virtually free from interference.” Oral Argument 6:50-7:27. That argument is waived for not being developed in the opening brief. See SmithKline Beecham Corp. v. Apotex Corp., 439 F.3d 1312, 1319 (Fed. Cir. 2006) (“Our law is well established that arguments not raised in the opening brief are waived.”). Even if it were not waived, I find this argu *1071 ment — which even the majority does not adopt — unpersuasive for the reasons discussed.